**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**CERTAIN UNDERWRITERS AT LLOYDS**                                  **PLAINTIFF**

**v.**                                 **4:08CV01843-WRW**

**REGIONS INSURANCE, INC. D/B/A**                                  **DEFENDANT**
**INSURISK EXCESS AND SURPLUS LINES**

<u>**ORDER**</u>

        Pending is the Defendant's Motion for Summary Judgment (Doc. No. 10). Plaintiff has

responded,[1] and Defendant has replied.[2] For the reasons set out below, Defendant's Motion is

GRANTED in part and DENIED in part.

**I.        BACKGROUND**[3]

        Insurisk Excess & Surplus Lines ("Insurisk") is a subsidiary of Regions Insurance

Company, Inc. ("Regions"). Plaintiff ("Underwriters") and Regions entered into a Binding

Authority Agreement, which authorized Insurisk to act as an agent and bind Underwriters to

certain types of insurance coverage in certain regions. The Binding Authority Agreement was

effective from July 1, 2001, to July 1, 2002.  Under the Binding Authority Agreement, Insurisk

was prohibited from issuing any insurance policy to any entity located in Alabama or to any

motel having a pool on its premises.

---

        [1]Doc. No. 18.

        [2]Doc. No. 21.

        [3]Unless otherwise noted, the background facts were taken from the parties' statements of
material facts. Doc. Nos. 12, 20.

A July 17, 2000, survey listing Insurisk as the insurance company revealed that Vasha Patel d/b/a Bamboo Motel ("Bamboo") was located in Alabama and had a pool on its premises.[4] Insurisk quoted a general liability insurance policy for Bamboo on April 22, 2002 -- the form stated in two separate sections that Bamboo was a "motel with out [sic] pool."[5]

Based on Insurisk's authority under the Binding Authority Agreement, Insurisk issued Commercial General Liability Insurance Policy Number 1273501L (the "Policy") to Bamboo for the period of June 1, 2002, to June 1, 2003. The Certificate of Coverage classified Bamboo as a "motel without pool."[6] The Underwriters were listed as the providers of the coverage under the Policy. The Underwriters were never informed that Bamboo was a motel *with* a pool.

On June 24, 2002, two minors -- Christopher Woods and Malcolm Crook -- drowned and a third minor was injured in Bamboo's pool. In June, 2003, Christopher Woods's parents filed suit against Bamboo and Insurisk in the Circuit Court of Mobile County, Alabama.

On August 6, 2003, the Underwriters wrote Insurisk, informally tendering the defense in the Woods litigation to Insurisk. On September 17, 2003, the Underwriters wrote Insurisk a second letter formally tendering the defense of the defendants in the Woods litigation. On November 7, 2003, the Underwriters demanded a defense and indemnification from Insurisk. Insurisk's lawyer responded only by advising that he "was available to meet . . . at any time."[7]

---

[4]Doc. No. 10-8.

[5]Doc. No. 10-3.

[6]Doc. No. 10-4.

[7]Doc. No. 18-6.

Jacqueline Crook, Malcolm Crook's mother, filed suit against Bamboo and Insurisk in the Circuit Court of Mobile County, Alabama, around March 11, 2004. On August 26, 2004, the Underwriters wrote Insurisk demanding a defense and indemnification from Insurisk for both the Woods and the Crook cases.

On September 13, 2004, Insurisk "decline[d] to assume the defense and indemnification" in the Woods and in the Crook cases.[8] Under the terms of the Policy, the Underwriters provided a defense to the insured defendants in the Woods and in the Crook cases.

On January 13, 2006, Insurisk filed a motion for summary judgment in the Woods and Crook cases. Both motions for summary judgment were granted in May, 2006.

On August 3, 2006, the Woods litigation settled, and the Underwriters paid $275,000 in settlement in August, 2006. On November 22, 2006, the Crook litigation settled, and Underwriters paid $15,000 in settlement in December, 2006.

The Underwriters filed their Complaint against Regions d/b/a Insurisk on August 27, 2008, alleging breach of the Binding Authority Agreement, negligence in issuing the Policy, and equitable subrogation.[9] The Underwriters' Amended Complaint also pled equitable indemnification.[10]

---

[8]Doc. No. 18-11.

[9]Doc. No. 1.

[10]Doc. No. 24.

3

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[11]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[12]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[13]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[14]  I must view the facts in the light most favorable to the party opposing the motion.[15]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts,

---

[11]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[12]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[13]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[14]*Id.* at 728.

[15]*Id.* at 727-28.

4

showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[16]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[17]

## III.   DISCUSSION

### A. Breach of Contract and Negligence: Statute of Limitations

Under Arkansas law, the statute of limitations for written contract actions is five years.[18]

Defendant asserts that the statute of limitations has run on the Underwriters' breach of contract and negligence claims. The Underwriters' Complaint alleges Defendant breached the Binding Authority Agreement, under which Defendant was prohibited from issuing a policy to any motel with a pool, and was negligent in issuing the Policy. The Underwriters' Complaint alleges that Defendant's breach and negligence occurred in July, 2002, when Insurisk issued the Policy to Bamboo despite Bamboo having a pool on its premises.[19] The Underwriters filed their Complaint about six years later, on August 27, 2008.[20]

The Underwriters contend that Ark. Code Ann. § 16-56-111(b) "sets the time within which to enforce written contractual duties or rights" without referencing the date of a breach.[21]

---

[16]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[17]*Anderson*, 477 U.S. at 248.

[18]Ark. Code Ann. § 16-56-111(b).

[19]Doc. No. 10.

[20]Doc. No. 1.

[21]Doc. No. 19.

The Underwriters' Complaint reads: "Insurisk breached the terms of the Biding Authority Agreement by the issuance of policy number 1273501L contrary to the express terms of the Binding Agreement. Insurisk's breach of contract proximately caused [the Underwriters'] damages."[22] The Underwriters urge that "the issue for the Court is when the cause of action to enforce written 'obligations, duties, or     rights . . . shall accrue.'"[23] The Underwriters assert that their cause of action for breach of the Binding Authority Agreement and negligence accrued only on September 13, 2004, when Insurisk rejected the Underwriters' demand for defense and indemnification.[24]

In its Complaint, the Underwriters specifically allege that the breach of the Binding Authority Agreement occurred when Insurisk issued the Policy, because Bamboo had a pool. I agree. Although a breach of contract always "gives rise to a claim for damages, there are instances in which the breach causes no loss."[25] Thus, the Underwriters' argument that their cause of action for breach of contract was not ripe until Plaintiff incurred economic loss -- when Insurisk refused to provide a defense and indemnification -- is misplaced. If there was a breach, it occurred, as the Underwriters suggest, when Insurisk issued the Policy. Because Insurisk issued the Policy in June or July, 2002, but the Underwriters did not file suit until August 27, 2008, the five-year statue of limitations has run on the Underwriters' breach of contract claim. I

---

[22]Doc. No. 1.

[23]Doc. No. 19.

[24]*Id*.

[25]Restatement 2d Contracts, § 346.

note that the Underwriters learned of the breach at the latest in June, 2003, when the Woods case was filed. The five-year statute of limitations has run even from that date.

The Underwriters allege Insurisk was negligent in issuing the Policy because Bamboo had a pool. The Underwriters' negligence cause of action a three-year statute of limitations.[26] The Underwriters cited *Midwest Mutual Ins. Co. v. Arkansas National Company*,[27] for the proposition that the statute of limitations for its negligence claim began to run when Insurisk did not agree to subrogation.  In *Midwest*, the Arkansas Supreme Court found that the running of the statute of limitations did not commence until an insured first learned it had no insurance coverage. In *Flemens v. Harris*,[28] which was issued 20 years after *Midwest*, the Arkansas Supreme Court acknowledged *Midwest*, but nonetheless went on to hold that "the statute of limitations for an insurance agent commences at the time the negligent act occurs . . . ."[29] I find that the three-year statute of limitations on the Underwriter's negligence claim began to run in July, 2002, and has expired. Even if the statute of limitations began to run in June, 2003, when the Woods case was filed, the statute of limitations for negligence has run.

---

[26]Ark. Code Ann. § 16-56-105.

[27]260 Ark. 352 (1976).

[28]323 Ark. 421 (1996).

[29]*Flemens v. Harris*, 323 Ark. 421, 427 (1996). The Arkansas Supreme Court acknowledged the harshness of this rule in its decision.

**B.      The Underwriters' Claims in Equity**

The Underwriters plead both equitable subrogation and equitable indemnity.[30]

Defendant contends that the Underwriters claim of equitable subrogation fails as a matter of law.[31] The Underwriters maintain that equitable subrogation should be viewed broadly as a means of avoiding injustice between parties.[32]

"[T]he doctrine of subrogation is a creature of equity, 'having for its basis the doing of complete and perfect justice between the parties, without regard to form, and its purpose and object is the prevention of injustice.'"[33] "Subrogation is a doctrine of purely equitable origin, and in its operation is always controlled by equitable principles."[34] Still, whether a plaintiff's subrogation claims are based on equity or law, there must be an interest to subrogate.[35] If Woods or Crook had a right to recover from Insurrisk, subrogation would be appropriate. But since that is not the case -- summary judgment was granted in favor of Insurisk in the Woods and Crook cases -- the Underwriters' equitable subrogation claim fails.

---

[30]Doc. Nos. 1, 18, and 23.

[31]Doc. No. 11, 21.

[32]Doc. No. 19.

[33]*Union Nat'l Bank v. Hooper*, 295 Ark. 83, 88 (1988) (Judge Glaze, concurring).

[34]*Cowling v. Britt*, 114 Ark 175, 183 (1914).

[35]Subrograte comes from the Latin "subrogare," which means to put in the place of another, or to substitute.

The Underwriters' claim for equitable indemnity has a three-year statute of limitations[36] which began to run when the Underwriters paid sums for which they seek indemnification.[37] The Underwriters made the first payments for legal fees in December, 2003, but did not file suit until August, 2008. Defendant asserts that because the Underwriters made the first payment for legal fees in December, 2003, the three-year statute of limitations has run.

Defendant cites *Trinity Universal Ins. Co. v. State Farm Mut. Auto Ins. Co.*[38] to support its assertion that a claim for indemnity accrues at the issuance of the first payment. *Trinity*, though, reads: "[T]he statute of limitations had not run for the reason that Trinity had no cause of action against anyone until it made its first *settlement* payment . . . ."[39] "A cause of action for indemnity does not accrue until payment of the *primary* liability is made . . . ."[40] The Underwriters paid the settlements in August and December, 2006. Thus, the Underwriters are within the three-year statute of limitations with respect to their equitable indemnity claim.

---

[36]See Ark. Code Ann. § 16-56-105.

[37]See *Larson Machine, Inc. v. Wallace*, 268 Ark. 192, 215 (1980).

[38]246 Ark. 1021 (1969).

[39]*Id.* at 1024-1025. Emphasis added.

[40]*Francosteel Corp. v. S.S. Tien Cheung*, 375 F. Supp. 794, 796 (S.D.N.Y. 1973) (emphasis added) (citing *St. Paul Fire and Marine Ins. Co. v. United States Lines*, 258 F.2d 374 (2d Cir. 1958); *States Steamship Co. v. American Smelting and Refining Co.* 339 F.2d 66 (9th Cir. 1964); and *Lyons-Magnus Inc. v. American-Hawaiian S.S. Co.*, 41 F. Supp. 575 (S.D.N.Y. 1941)).

**CONCLUSION**

Based on the findings of fact and conclusions of law above, Defendant's Motion for Summary Judgment (Doc. No. 10) is GRANTED with respect to Plaintiff's breach of contract, negligence, and equitable subrogation claims, and DENIED without prejudice in connection with Plaintiff's equitable indemnification claim.[41]

IT IS SO ORDERED this 11th day of May, 2009.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[41]The Underwriters filed an Amended Complaint asserting equitable indemnity after Defendant filed its Motion for Summary Judgment. Defendant addressed the Underwriters' equitable indemnity claim in Defendant's Reply, which reads, in part: "This claimed cause of action for implied indemnity is clearly a new cause of action and will be full [sic] addressed by Insurisk only once it is actually part of the pleadings." Doc. No. 21. Because the Underwriters' Amended Complaint was not yet filed when Defendant filed its Reply, I deny summary judgment on the Underwriters' equitable indemnity claim without prejudice.